WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


HIGH PURITY D.R.A.W., INC., an       )
Arizona corporation,                 )
                                     )
                    Plaintiff,       )
                                     )
        vs.                          )
                                     )
SANVEO, INC., et al.,                )
                                     )          No. 2:17-cv-1784-HRH
                    Defendants.      )
_____)


O R D E R

Motion to Dismiss for Lack of Personal Jurisdiction
and for Improper Venue, and Alternatively, Motion for Change of Venue

Defendants move to dismiss plaintiff's complaint for lack of personal jurisdiction and

for improper venue.[1]  In the alternative, defendants move to transfer this case to the Northern

District of California.[2]  These motions are opposed.[3]  Oral argument was requested but is not

deemed necessary.

_____

[1]Docket No. 10.

[2]Docket No. 10.

[3]Docket No. 15.

<u>Background</u>

Plaintiff is High Purity D.R.A.W., Inc. Plaintiff is alleged to be an Arizona corporation with its principal place of business in Maricopa County, Arizona.[4]

Defendants are Sanveo, Inc., Ashfaq Rasheed ("A.R."), Sheema Javeed, Irshad Rasheed ("I.R."), and Sabiha Rasheed.[5] Sanveo is alleged to be a California corporation with its principal place of business in California.[6] A.R. is alleged to be the President and CEO of Sanveo and a citizen of California.[7] Javeed is alleged to be the wife of A.R.[8] I.R. is alleged to be the Vice President and COO of Sanveo and a citizen of California.[9] Sabiha Rasheed is alleged to be the wife of I.R.[10] Javeed and Sabiha Rasheed are named as defendants because plaintiff alleges that A.R.'s and I.R.'s wrongful conduct was "for the benefit of the marital community[.]"[11]

Plaintiff alleges that in March 2015, Sanveo contacted plaintiff "to provide 3D Computer-Aided Design ('CAD')/BIM support for the King Faisal Specialist Hospital

---

[4]Complaint at 1, ¶ 1, Docket No. 1.

[5]Sabiha Rasheed is sued as Jane Doe Rasheed.

[6]Complaint at 2, ¶ 3, Docket No. 1.

[7]<u>Id.</u> at ¶ 4.

[8]<u>Id.</u> at ¶ 5.

[9]<u>Id.</u> at ¶ 6.

[10]<u>Id.</u> at ¶ 7.

[11]<u>Id.</u> at ¶¶ 5, 7.

('KFSH') Project in" Saudi Arabia "that Sanveo had been retained by the Saudi Bin Laden Group to assist on."[12]  Sanveo ultimately retained plaintiff to convert 2D design documents to 3D BIM models for the ductwork and piping on the second floor of the KFSH Project, work which plaintiff timely completed.[13]  Sanveo's and plaintiff's agreement was memorialized in a Services Proposal Agreement dated March 23, 2015.[14]

Plaintiff alleges that it also agreed to do additional work on the KFSH Project for Sanveo but that Sanveo refused to pay plaintiff for this additional work.[15]  Plaintiff further alleges that in May 2015, Sanveo asked plaintiff to begin working on three other projects (the "Egan Projects") and that plaintiff agreed to do so.[16]  Plaintiff alleges that Sanveo refused to pay it for the work it did on the Egan Projects.[17]

Plaintiff alleges that A.R. knew that Sanveo had low bid the KFSH Project and that Sanveo stood to lose more than $1 million and that A.R.'s "intent ... was to simply obtain time and materials from others ... and ... then not fully pay for th[e] time and materials

---

[12]Id. at ¶ 11.

[13]Id. at 4, ¶ 24.

[14]Exhibit A, Complaint, Docket No. 1.

[15]Complaint at 5-6, ¶¶ 28-29, 32, Docket No. 1.

[16]Id. at 7, ¶ 27.

[17]Id. at 8, ¶ 42.

provided by others[.]"[18]  Plaintiff alleges however that A.R. represented to plaintiff "that, although he knew Sanveo would sustain a loss" on the KFSH Project, "he intended it so that Sanveo would make it up on numerous other projects planned by the Saudi Bin Laden Group[.]"[19]  Plaintiff alleges that while it was working for Sanveo, "A.R. ... promised to acquire [plaintiff] in whole and to award [plaintiff] all future plumbing and HVAC-related work of Sanveo."[20]  Plaintiff alleges "A.R. repeatedly assured" Jeff Cunningham, plaintiff's principal, "that he anticipated that Sanveo would be acquiring the assets and resources of [plaintiff] at a fair market value, through a purchase acquisition in the near term."[21]

Plaintiff alleges that "[b]ecause Sanveo refused to pay for work performed by [plaintiff] at its request, [plaintiff] was forced to lay off the majority of its employees and [plaintiff's] bank significantly reduced its credit resources due to the uncollectible accounts receivable from Sanveo[.]"[22]  Plaintiff alleges that "[it] had to prematurely break its lease and close its corporate office..., along with having to cease operations due to non-payment of its rightful earnings by Sanveo."[23]

---

[18]Id. at 11, ¶ 56.

[19]Id.

[20]Id. at 10, ¶ 48.

[21]Id. at 9, ¶ 45.

[22]Id. at 12, ¶ 61.

[23]Id.

On June 8, 2017, plaintiff commenced this action. In its complaint, plaintiff asserts the following claims against Sanveo: 1) breach of contract, 2) breach of an implied contract, 3) breach of the implied covenant of good faith and fair dealing, 4) unjust enrichment, 5) promissory estoppel, 6) fraudulent misrepresentation, and 7) civil conspiracy. Plaintiff asserts three claims against A.R.: 1) promissory estoppel, 2) fraudulent misrepresentation, and 3) civil conspiracy. Plaintiff asserts a civil conspiracy claim against I.R.

Defendants now move to dismiss plaintiff's complaint for lack of personal jurisdiction and for improper venue. In the alternative, defendants move to transfer this case to the Northern District of California.

### Motion to Dismiss for Lack of Personal Jurisdiction

"Where defendants move to dismiss a complaint for lack of personal jurisdiction, [the] plaintiff[] bear[s] the burden of demonstrating that jurisdiction is appropriate." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'"[24] Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "In determining whether [a plaintiff has] met this prima facie burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between

_____

[24]In their reply brief, defendants point out that at an evidentiary hearing on jurisdiction, "the burden on the plaintiff shifts to the preponderance of the evidence." Rano v. Sipa Press, Inc., 987 F.2d at 580, 587, n.3 (9th Cir. 1993). But no one has requested an evidentiary hearing in this case.

the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor....'" Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff and all doubts are resolved in [the plaintiff's] favor.'" Id. (quoting Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, [the court] look[s] to the law of the state in which the district court sits." Fiore v. Walden, 688 F.3d 558, 573 (9th Cir. 2012). "Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution." Ariz. School Risk Retention Trust, Inc. v. NMTC, Inc., 169 F. Supp. 3d 931, 935 (D. Ariz. 2016). "The Constitution permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

Although "there are two forms that personal jurisdiction may take: general and specific[,]" Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015), plaintiff only contends that defendants are subject to specific jurisdiction in Arizona. The court

employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id.

Purposeful Availment/Direction

"For claims sounding in contract, [the court] generally appl[ies] a 'purposeful availment' analysis and ask[s] whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 1212 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)). "For claims sounding in tort, [the court] instead appl[ies] a 'purposeful direction' test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." Id. Personal jurisdiction must exist for each claim asserted against a defendant. Data Disc, Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977).

As for plaintiff's contract claims against Sanveo and A.R., "'a contract alone does not automatically establish minimum contacts in the plaintiff's home forum.'" Picot, 780 F.3d at 1212 (quoting Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008)). "Rather, there must be 'actions by the defendant himself that create a substantial connection with the forum State.'" Id. (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). "A defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Id. (quoting Sher, 911 F.2d at 1362). "In determining whether such contacts exist, [the court] consider[s] 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. (quoting Burger King, 471 U.S. at 479). "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006).

Defendants contend that the contract between plaintiff and Sanveo was negotiated and entered into in California, that Sanveo fulfilled its obligations under the contract in California, that the contract was intended to benefit neither Arizona nor its citizens but rather involved work for a project in Saudi Arabia, that the work contemplated by the contract did not involve a substantial or continuing relationship with Arizona, and that plaintiff sent its work product to California. Defendants further contend that Sanveo learned of plaintiff from one of Sanveo's employees who had worked with plaintiff on a past project and that there

was only one in-person meeting in Arizona involving the contract for the KFSH Project. Defendants support these contentions with the declaration of A.R.

A.R. avers that

> [i]n or about late February or the first week of March 2015, former Sanveo employee, John Mack contacted [plaintiff] from California to inquire whether it could provide subcontracting services for Sanveo on a project in Saudi Arabia. I am informed and believe that John Mack knew of [plaintiff] because while working for a former employer John Mack worked with [plaintiff] on a project in California.[25]

A.R. further avers that "[o]n the morning of March 11, 2015 a telephone conference call was conducted, which I attended in California" and during which the parties discussed the KFSH Project.[26] As a result of that phone call, Sanveo sent drawings to plaintiff and on March 16, 2015, plaintiff sent "an estimate/proposal to Sanveo in California...."[27] A.R. avers that on March 19, 2015, he and John Mack traveled to Arizona to meet with Jeff Cunningham.[28] After this meeting, A.R. "signed the contract [between plaintiff and Sanveo] in the Sanveo offices in Newark, California" and sent the contract, "via email" to plaintiff.[29] A.R. further

---

[25]Declaration of Ashfaq Rasheed in Support of Defendants' Motion to Dismiss [etc.] at 2, ¶ 12, Exhibit A, Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss [etc.], Docket No. 11.

[26]Id. at 2, ¶ 13.

[27]Id.

[28]Id. at ¶ 14.

[29]Id.

avers that "[a]ll other contact I made to [plaintiff] was via telephone calls I made outside of Arizona and emails I sent from outside Arizona."[30] A.R. also avers that plaintiff sent the work it did on the KFSH Project "to Sanveo's Newark, California office electronically via email and, or Dropbox."[31] A.R. avers that Sanveo paid plaintiff "via wire transfer made from a Wells Fargo branch in Fremont, California."[32] Finally, A.R. avers that there was only one in-person meeting held after the KFSH Project contract was executed and that this meeting was held in California on April 17, 2015.[33] Based on these averments, defendants insist that Sanveo and A.R. did not take any actions that created a substantial connection to Arizona.

Plaintiff, however, argues that Sanveo and A.R. did take actions that created a substantial connection to Arizona. Plaintiff argues that Sanveo solicited plaintiff's business in Arizona. Cunningham avers that plaintiff "did not solicit Sanveo's business" but rather Sanveo reached out to Arizona and contacted plaintiff.[34] Similarly, Mack avers that he suggested to A.R. that Sanveo contact plaintiff to work on the KFSH Project and that

---

[30]Id.

[31]Id. at ¶ 15.

[32]Id. at 3, ¶ 17.

[33]Id. at ¶ 16.

[34]Declaration of Jeff Cunningham at 1-2, ¶ 3, Exhibit A, Plaintiff's Response [etc.], Docket No. 15.

plaintiff "did not solicit Sanveo's business."[35]  Plaintiff also argues that there was more than

one meeting in Arizona.  Cunningham avers that "John Mack and Jason Dodds, Sanveo's

Director of Sales, made additional visits to [plaintiff's] Phoenix offices related to the KFSH

Project.  Sanveo's KFSH Project Manager, Husein Krvavac, also visited [plaintiff's] offices

in Phoenix."[36]  Mack confirms that he made "additional visits" to plaintiff's Phoenix office

besides the March 2015 meeting.[37]  Plaintiff also argues that the contract for the KFSH

Project was verbally entered into at the March 2015[38] meeting in Phoenix.  Cunningham

avers that at this meeting, "Sanveo and [plaintiff] ... agreed to the terms and conditions of

Sanveo securing [plaintiff's] participation in the rescue of the KFSH Project for Sanveo.

A.R. verbally agreed to the terms in the Service Proposal Agreement, backed by a handshake,

and committed to engage [plaintiff] on the KFSH Project."[39]  Plaintiff also contends that

Sanveo had a Regional Sales Representative, Craig Fiore, who was actively seeking out

business opportunities for Sanveo in Arizona.  Cunningham avers that Fiore presented the

---

[35]Declaration of John Mack at 1-2, ¶¶ 3-4, Exhibit B, Plaintiff's Response [etc.], Docket No. 15.

[36]Cunningham Declaration at 2, ¶ 8, Exhibit A, Plaintiff's Response [etc.], Docket No. 15.

[37]Mack Declaration at 2, ¶ 8, Exhibit B, Plaintiff's Response [etc.], Docket No. 15.

[38]It is not clear at this point whether this meeting took place on March 15, 2015 or March 19, 2015.

[39]Cunningham Declaration at 2, ¶ 6, Exhibit A, Plaintiff's Response [etc.], Docket No. 15.  Mack makes this same averment.  Mack Declaration at 2, ¶ 6, Exhibit B, Plaintiff's Response [etc.], Docket No. 15.

Egan Projects to plaintiff and that Fiore was "actively involved in seeking out business opportunities for Sanveo in Arizona involving" plaintiff.[40] Moreover, Cunningham avers that at the March 2015 meeting, "A.R. represented that in acquiring [plaintiff], Sanveo's goal was to augment its offerings for BIM support in other construction disciplines, establish a central hub office in Phoenix for the greater southwest region, and take on projects globally."[41] Cunningham further avers that "A.R. expressed in several follow-up discussions ... that he desired all future Sanveo BIM projects that involved HVAC, piping, or plumbing building systems or high-tech to be processed through [plaintiff's] Phoenix offices."[42] Cunningham also avers that at the April 2015 meeting in California "A.R. was overly anxious to continue to discuss his plans regarding the sale of [plaintiff] to Sanveo" and that A.R. attached the "due diligence materials related to Sanveo's acquisition of" plaintiff to a May 3, 2015 email introducing I.R. as "Sanveo's new Chief Operations Officer."[43]

Defendants argue that plaintiff is making too much of Sanveo's interest in acquiring plaintiff. Defendants argue that this was nothing more than a brief discussion and that the discussion occurred after the contract for the KFSH Project was executed and thus the

---

[40]Cunningham Declaration at 3, ¶ 9, Exhibit A, Plaintiff's Response [etc.], Docket No. 15.

[41]Id. at 2, ¶ 4. John Mack, who was at the meeting, makes this exact same averment. Mack Declaration at 2, ¶ 5, Exhibit B, Plaintiff's Response [etc.], Docket No. 15.

[42]Cunningham Declaration at 2, ¶ 5, Exhibit A, Plaintiff's Response [etc.], Docket No. 15.

[43]Id. at 3, ¶¶ 10, 12.

acquisition communications are irrelevant to the jurisdictional question. In his reply declaration, A.R. avers that "I did not represent to [plaintiff] 'that in acquiring [plaintiff] Sanveo's goal was to augment its offering for BIM support in other construction disciplines, establish a central hub office in Phoenix for the greater southwest region, and take on projects globally' as [p]laintiff stated in its Response to Defendants['] Motion to Dismiss."[44] A.R. further avers that "[i]n or about May 2015, Sanveo briefly initiated a conversation about acquiring [plaintiff.] I sent [plaintiff] a due diligence package, but I never heard back. The conversation did not go anywhere and Sanveo never pursued acquiring [plaintiff]. Any conversations Sanveo had about acquiring [plaintiff] occurred in California."[45]

Defendants also dispute that the contract for the KFSH Project was entered into in Arizona and then only "memorialized" in California. In his reply declaration, A.R. avers that "[a]fter the March 19, 2015 meeting, Sanveo, from California, further negotiated, finalized, and approved the contract...."[46] Defendants also contend that it is not true that Sanveo had a Sales Representative who was actively seeking out business opportunities in Arizona. A.R. avers that "Fiore was Sanveo's Regional Sales Representative for the entire southwest region including, South Coast, Southern California, Arizona, Nevada, and Hawaii" but that "Fiore

---

[44]Declaration of Ashfaq Rasheed in Reply to Plaintiff's Response [etc.] at 1, ¶ 3, Exhibit A, Reply to Plaintiff's Response [etc.], Docket No. 16.

[45]Id. at ¶ 5.

[46]Id. at ¶ 4.

never generated any sales outside of his Southern California area."[47]  As for plaintiff's reliance on the contracts for the Egan Projects, defendants argue that Sanveo took no action in Arizona to get plaintiff involved in these projects and that the Egan Projects did not create any continuing obligations on the part of Sanveo to Arizona residents.  A.R. avers that any conversations Sanveo had with plaintiff about the Egan Projects occurred in California, except for when "John Mack and Jason Dodds visited [plaintiff's] offices to help negotiate a resolution of the dispute that gave rise to this action."[48]

If the court resolves the conflicts in the affidavits offered by the parties in plaintiff's favor, which it must, then the evidence shows that Sanveo reached out to plaintiff in Arizona; that the contract for the KFSH Project was negotiated in Arizona by A.R. on behalf of Sanveo;  that the terms and conditions of that contract were agreed to in Arizona by A.R. on behalf of Sanveo; that Sanveo, through A.R., was attempting to acquire plaintiff in order to have a business presence in Arizona; and that Sanveo representatives traveled to Arizona more than once in connection with plaintiff's work on the KFSH Project.  This is sufficient evidence to show that Sanveo and A.R. engaged in affirmative conduct to promote the transaction of business in Arizona.  The purposeful availment prong is met as to the contract claims against Sanveo and A.R.

---

[47]Id. at 2, ¶ 9.

[48]Id. at ¶¶ 6, 8.

As for the tort claim asserted against Sanveo, A.R., and I.R., the court applies the "three-part 'effects' test derived from <u>Calder v. Jones</u>, 465 U.S. 783 (1984)." <u>Picot</u>, 780 F.3d at 1213–14. "Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" <u>Id.</u> at 1214 (quoting <u>Schwarzenegger</u>, 374 F.3d at 803).

Defendants only address factor three, arguing that plaintiff cannot show that they knew that the harm alleged was likely to be suffered in Arizona, given that all of Sanveo's actions, and the actions of A.R. and I.R. on behalf of Sanveo, occurred in California, except for the initial meeting between A.R. and Cunningham. Defendants also point out that I.R. did not join Sanveo until April 27, 2015,[49] which was after Sanveo and plaintiff had executed the contract for the KFSH Project. I.R. avers that "[t]he only contact I have had with [plaintiff] was through a couple of phone calls I made in California and a handful of emails I sent from California."[50]

Plaintiff has alleged that Sanveo and A.R. made fraudulent misrepresentations and conspired to induce plaintiff to perform work for which Sanveo had no intention of paying. This conduct was expressly aimed at Arizona because plaintiff is an Arizona corporation with

---

[49]Declaration of Irshad Rasheed in Support of Defendants' Motion to Dismiss [etc.], at 1, ¶ 2, Exhibit B, Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss [etc.], Docket No. 11.

[50]<u>Id.</u> at ¶ 5.

its principal place of business in Arizona. Taking plaintiff's allegations as true, Sanveo and A.R. had to have known that their conduct would cause harm in Arizona given that they knew that plaintiff was an Arizona company with its principal place of business in Arizona. Plaintiff has shown purposeful direction with respect to Sanveo and A.R.

As to I.R., plaintiff alleges that "[a]lthough A.R. was held out to [plaintiff] as the 'figure head' of Sanveo, within Sanveo A.R. was actually subordinate to I.R. and took direction from him."[51] Plaintiff further alleges that "on or about May 3, 2015, I.R. and A.R. began working in concert on a plan for Sanveo and A.R. to induce [plaintiff] to accept additional work on the KFSH Project and to accept work on the Egan Projects, knowing and intending that Sanveo would not pay for all of the work."[52] Taking these allegations as true, they show that I.R. committed an intentional act (conspiring with A.R.) directed at Arizona, which caused harm that I.R. knew would be suffered in Arizona given that plaintiff was an Arizona corporation with its principal place of business in Arizona. Plaintiff has shown purposeful direction with respect to I.R.

Forum Related Activities

"Under the second prong of [the] personal jurisdiction analysis, the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities." Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007). "[T]he Ninth Circuit follows the 'but

---

[51]Complaint at 12, ¶ 59, Docket No. 1.

[52]Id. at ¶ 60.

for' test" to determine whether a plaintiff's claim arises out of the defendant's forum-related activities. Id. (quoting Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001)).

Plaintiff's claims would not have arisen but for Sanveo's, A.R.'s, and I.R.'s contacts with Arizona. All of Sanveo's, A.R.'s, and I.R.'s contacts are alleged to involve either the KFSH Project or the Egan Projects, and all of plaintiff's claims arise out of the work it did on these projects.

Reasonableness

If the first two prongs of the jurisdictional test are met, "the district court's jurisdiction is presumed reasonable unless [defendants] make[] a compelling case to the contrary." Ochoa, 287 F.3d at 1192. To determine whether defendants have made such a case, the court considers the following seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Menken, 503 F.3d at 1060.

extent of defendants' purposeful interjection. As discussed above in detail, the extent of Sanveo's, A.R.'s, and I.R.'s purposeful interjection into Arizona was substantial. This factor weighs in favor of jurisdiction in Arizona being reasonable.

<u>burden on defendant</u>.  Defendants argue that it would impose an undue burden on them to have to defend this suit in Arizona.  A.R. avers that

> [i]t would be an enormous burden for me or Sanveo to defend this suit in Arizona.  I live and work in Alameda County, California; Sanveo's place of business is located in Newark, California; all of my and Sanveo's documents, records, and papers are located in California; all of Sanveo's witnesses to the matters raised in the pleadings in this action are located outside of Arizona; and any hearings and/or proceedings that would require Sanveo's or my appearance would necessitate extended absences from home, work and family.[53]

I.R., Javeed, and Sabiha Rasheed all aver that "[i]t would be an enormous burden ... to defend this suit in Arizona" because they "live and work in Alameda County, California; and any hearings and/or proceedings that would require [their] appearance would necessitate extended absences from [their] home, [their] work, and [their] family."[54]

These averments establish that it would be a burden on defendants to have to litigate in Arizona.  This factor weighs against jurisdiction in Arizona being reasonable.

<u>the extent of conflict with the sovereignty of California</u>.  Neither party makes any argument on this factor, and the court does not perceive any conflict.  This factor is neutral.

---

[53]A.R. Declaration at 3, ¶ 20(b), Exhibit A, Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss [etc.], Docket No. 11.

[54]I.R. Declaration at 1, ¶ 6(b), Exhibit B; Declaration of Sheema Javeed in Support of Defendants' Motion to Dismiss [etc.] at 1, ¶ 5(b), Exhibit C; and Declaration of Sabiha Rasheed ... in Support of Defendants' Motion to Dismiss [etc.] at 1, ¶ 5(b), Exhibit D; Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss [etc.], Docket No. 11.

Arizona's interest in adjudicating the dispute.  Arizona has an interest in adjudicating this dispute involving an Arizona corporation and contracts entered into with that corporation.  This factor weighs in favor of jurisdiction in Arizona being reasonable.

most efficient judicial resolution.  Arizona may not be the most efficient jurisdiction because a majority of the witnesses and exhibits are in California. This factor weighs against jurisdiction in Arizona being reasonable.

the importance of the forum to the plaintiff's interest in convenient and effective relief.  Litigating this matter in Arizona would be more convenient for plaintiff.  This factor weighs in favor of jurisdiction in Arizona being reasonable.

the existence of an alternative forum.  California is an alternative forum.  This factor weighs against jurisdiction in Arizona being reasonable.

"The balance [here] is essentially a wash, since some of the reasonableness factors weigh in favor of" jurisdiction in Arizona being reasonable while "others weigh against" jurisdiction in Arizona being reasonable.  Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).  Sanveo, A.R., and I.R. have not met their "burden of presenting a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice."  Id.  Thus, it would be reasonable to exercise personal jurisdiction over Sanveo, A.R., and I.R.

As for Javeed and Sabiha Rasheed, defendants argue that it is not sufficient that plaintiff has alleged that these defendants were "designated" because the alleged wrongful

conduct of their husbands was for the benefit of the marital community.  Defendants argue

that Javeed and Sabiha Rasheed had no contact with Arizona and that plaintiff has no

evidence to the contrary.  Javeed avers that although she works for Sanveo, she has never

conducted business in Arizona or even been to Arizona.[55]  Sabiha Rasheed avers that she is

"not an owner, officer, director, shareholder, employee, or agent of Sanveo" and that she has

"never been involved with any action related to Sanveo" or plaintiff.[56]

Arizona courts have held that "when non-resident spouses reside in a community

property state, Arizona courts may exercise personal jurisdiction over both of them even

when one lacks minimum contacts with Arizona." Sigmund v. Rea, 248 P.3d 703, 705 (Ariz.

Ct. App. 2011); see also, Best Western Int'l, Inc. v. Doe, Case No. CV–06–1537–PHX–

DGC, 2007 WL 2410341, at *2 (D. Ariz. Aug. 21, 2007) ("[i]f the evidence ultimately shows

that [d]efendants acquired community property at some time in their marriages, there would

appear to be a marital community on behalf of which [d]efendants could act, potentially

giving rise to jurisdiction over their spouses"); Maguire v. Coltrell, Case No. CV-

14–01255–PHX–DGC, 2015 WL 1966471, at *4 (D. Ariz. April 30, 2015) ("A spouse's

potential liability may be relevant to the personal-jurisdiction analysis where, as in Arizona,

both spouses must be named in a civil action in order for the plaintiff to execute a judgment

---

[55]Javeed Declaration at 1, ¶¶ 1, 4, Exhibit C, Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss [etc.], Docket No. 11.

[56]Sahib Rasheed Declaration at 1, ¶ 1, Exhibit D, Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [etc.], Docket No. 11.

on their community property"). Given that the individual defendants all live in California and California is a community property state, <u>Ordlock v. C.I.R.</u>, 533 F.3d 1136, 1137 (9th Cir. 2008), it is likely that they have acquired community property at some point in their marriages. Thus, even though they have no contacts with Arizona, the court has personal jurisdiction over Javeed and Sahib Rasheed because it has personal jurisdiction over their husbands.

In sum, the court has personal jurisdiction over all the defendants for all of plaintiff's claims. Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## Motion to Dismiss for Improper Venue

"Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue." <u>Omnicell, Inc. v. Medacist Solutions Group, LLC</u>, 272 F.R.D. 469, 472 (N.D. Cal. 2011). "When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings." <u>Id.</u> "Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper." <u>Id.</u>

"Generally, courts look to the venue provisions of 28 U.S.C. § 1391 to determine whether venue is proper." <u>Id.</u> Plaintiff alleges[57] that venue is proper in Arizona pursuant to Section 1391(b)(2) which provides, in relevant part, that "[a] civil action may be brought in

---

[57]Complaint at 2, ¶ 10, Docket No. 1.

... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

Defendants, however, argue that venue is not proper in Arizona because only insignificant events occurred in Arizona. Defendants argue that a substantial portion of the events giving rise to plaintiffs' claims occurred in California, rather than Arizona.

"'Substantiality is measured by considering the nexus between the events and the nature of the claims; [that is,] <u>significant</u> events or <u>omissions</u> material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere.'" <u>Lee v. Corrections Corp. of Amer.</u>, 525 F. Supp. 2d 1238, 1241 (D. Hawai'i 2007) (quoting <u>Ukai v. Fleurvil</u>, Civil No. 06–00237 JMS/KSC, 2006 WL 3246615, *3 (D. Haw. Nov. 7, 2006)). It is not necessary "that a majority of the events have occurred in the district where suit is filed" nor is it necessary "that the events in that district predominate." <u>Rodriguez v. California Highway Patrol</u>, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000). "All that [p]laintiff[] need show is that a substantial part of the events giving rise to [its] claims occurred in" Arizona. <u>Id.</u>

A substantial portion of the events giving rise to plaintiff's claims occurred in Arizona. These events include Sanveo reaching out to Arizona to retain plaintiff, the contract for the KFSH Project being negotiated in Arizona, certain misrepresentations by A.R. being made in Arizona, and plaintiff's performing its work for Sanveo in Arizona. Venue is proper in Arizona. Defendants' motion to dismiss for improper venue is denied.

<u>Motion to Transfer Venue</u>

Defendants move to transfer this matter to the Northern District of California. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This action could have been brought in the Northern District of California because all of the defendants are domiciled in California and at least one of the defendants resides in the Northern District of California. 28 U.S.C. § 1391(b)(1).

Defendants must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986). "Transfer of venue under the law of the Ninth Circuit based on forum non conveniens pursuant to section 1404(a) is 'an exceptional tool to be applied sparingly.'" <u>Bomanite Corp. v. Newlook Int'l., Inc.</u>, Case No. 1:07-CV-01640-OWW-SMS, 2008 WL 1767037, at *11 (E.D. Cal. April 16, 2008) (quoting <u>Ravelo Monegro v. Rosa</u>, 211 F.3d 509, 514 (9th Cir. 2000)). In deciding whether to transfer venue, the court may consider the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of

unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000).

location where the relevant agreements were negotiated and executed. The evidence currently before the court shows that the contract for the KFSH Project was negotiated in Arizona and executed in California. The evidence is less clear as to where the Egan Projects contracts were negotiated and executed but it seems likely that some of this occurred in Arizona and some in California. This factor is neutral.

state most familiar with the law. It is hard to say what law will apply to plaintiff's claims. If Arizona law applies, this court would be more familiar with the applicable law. If California law applies, a California court would be more familiar with the applicable law. This factor is neutral.

plaintiff's choice of forum. This factor weighs in favor of Arizona.

parties' contacts with the forum. This factor is neutral because there are as many contacts with Arizona as there are with California.

the differences in cost. It may be slightly more expensive to litigate this case in Arizona because a majority of the witnesses are in California. This factor weighs in favor of California.

the availability of compulsory process to compel attendance of unwilling non-party witnesses. Most of the witnesses in this case are likely to be employees or parties; so, this factor is neutral.

<u>ease of access to proof</u>. As defendants point out, their records are all in California. But, plaintiff's records are all in Arizona  This factor is neutral.

In sum, five of the factors are neutral, one weighs in favor of Arizona, and one weighs in favor of California. Defendants have not made a strong showing of inconvenience. Defendants' motion to transfer venue is denied.

Conclusion

Defendants' motion for lack of personal jurisdiction and for improper venue[58] is denied. Defendants' alternative motion to transfer venue[59] is also denied.

DATED at Anchorage, Alaska, this 17th day of October, 2017.

/s/ H. Russel Holland
United States District Judge

---

[58]Docket No. 10.

[59]Docket No. 10.